1   Jonathan D. Baker (CSB No.: 196062)
    jonathan.baker@dechert.com
2   DECHERT LLP
    2440 W. El Camino Real, Suite 700
3   Mountain View, California 94040
    Telephone:    (650) 813-4800
4   Facsimile:    (650) 813-4848

5   Attorneys for Defendant and Counterclaimant
    3DLabs Inc., Ltd.

6

7

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12   FUZZYSHARP TECHNOLOGIES                    Case No. C07-CV-5948-SBA
     INCORPORATED,
13                                              **3DLABS' NOTICE OF MOTION AND
                    Plaintiff,                  MOTION FOR SUMMARY JUDGMENT
14                                              OF INVALIDITY UNDER 35 U.S.C. § 101
            v.                                  FOR NON-PATENTABLE SUBJECT
15                                              MATTER**
     3DLABS INC., LTD.,
16
                    Defendant.                  The Honorable Saundra Brown Armstrong
17
                                                Date:        September 9, 2009
18   3DLABS INC., LTD.,                         Time:        9:00 a.m.
                                                Courtroom:   Courtroom 3, 3rd Floor
19                  Counterclaimant,            Judge:       Hon. Saundra Brown Armstrong

20          v.

21   FUZZYSHARP TECHNOLOGIES
     INCORPORATED,
22
                    Counter-Defendant.
23

24

25

26

27

28

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

3DLABS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY UNDER 35 U.S.C. § 101 FOR NON-PATENTABLE SUBJECT
MATTER; CASE NO.: C07-CV-5948-SBA

13515654

1

**TABLE OF CONTENTS**

2

**Page**

3

4   MEMORANDUM OF POINTS AND AUTHORITIES ............................................................IV

5   I.      INTRODUCTION ................................................................................................... 1

6   II.     ISSUE TO BE DECIDED ........................................................................................ 1

7   III.    STATEMENT OF FACTS ........................................................................................ 2

8   IV.     LEGAL STANDARDS ............................................................................................. 3

9   V.      ARGUMENT ......................................................................................................... 4

10          A.     The Asserted Claims Fail To Satisfy The "Machine" Branch Of The Test
                   For Patentable Subject Matter Under § 101 Because They Are Not Tied To
11                 A Particular Machine .................................................................................. 5

12                 1.     The Asserted Claims Are Not Tied To A Particular Machine As
                          Required By *Bilski* ............................................................................ 5

13

14                 2.     The Recitation Of A "Computer" And "Computer Storage" In
                          Some Of The Claims Does Not Impose Any Meaningful Limit On
                          Claim Scope As Required By *Bilski* ................................................. 6

15

16                 3.     The "Computer" and "Computer Storage" Recited In Some of the
                          Claims Provide Merely Insignificant Extra-Solution Activity................... 8

17          B.     The Asserted Claims Fail to Satisfy The "Transformation" Branch Of The
                   Test For Patentable Subject Matter Under § 101 Because They Do Not
18                 Transform An Article Into A Different State Or Thing ........................................ 8

19          C.     The Court Should Grant 3DLabs' Motion For Summary Judgment Or
                   Alternatively Stay The Case.................................................................................. 10

20
       VI.   CONCLUSION ................................................................................................... 11
21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3

### FEDERAL CASES

4

5
*Abbott Laboratories, Inc. v. Medtronic, Inc.*,
No. C-08-4962-DLJ, 2009 U.S. Dist. LEXIS 29283 (N.D. Cal. March 24, 2009)........... 10

6
*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986) ................................................................................................................ 3
7

8
*Barmag Barmer Maschinefabrik AG v. Murata Mach., Ltd.*,
731 F.2d 831 (Fed. Cir. 1984) ................................................................................................ 3

9
*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008) .................................................... 1, 3, 4, 5, 6, 7, 8, 9, 10, 11
10

11
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................ 2

12
*Classen Immunotherapies, Inc. v. Biogen Idec*,
Nos. 2006-1634, 2006-1649, 2008 WL 5273107 (Fed. Cir. 2008)..................................... 3
13

14
*CyberSource Corp. v. Retail Decisions, Inc.*,
No. C 04-03268, 2009 U.S. Dist. LEXIS 26056 (N.D. Cal. March 26, 2009) .......... 5, 7, 9

15
*DealerTrack, Inc. v. Huber*,
No. CV 06-2335, 2009 U.S. Dist. LEXIS 58125 (C.D. Cal. July 7, 2009) ................... 5, 6
16

17
*Diamond v. Diehr*,
450 U.S. 175 (1981) ....................................................................................................... 3, 4, 7

18
*Every Penny Counts, Inc. v. Bank of America Corp.*,
No. 2:07-cv-042, 2009 U.S. Dist. LEXIS 53626 (M.D. Fla. May 27, 2009)................. 7, 8
19

20
*Ex Parte Cornea-Hasegan*,
No. 2008-4742, 2009 WL 86725 (Bd. Pat. App. & Interf. Jan. 13, 2009)......................... 7

21
*Ex Parte Langemyr*,
No. 2008-1495, 2008 Pat. App. LEXIS 13 (Bd. Pat. App. & Interf. May 28, 2008) . 4, 7, 8
22

23
*Ex Parte Mitchell*,
No. 2008-2012, 2009 WL 460662 (Bd. Pat. App. & Interf. Feb. 23, 2009)...................... 5

24
*Ex Parte Nawathe*,
No. 2007-3360, 2009 WL 327520 (Bd. Pat. App. & Interf. Feb. 9, 2009)................... 5, 6
25

26
*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
333 U.S. 127 (1948) ................................................................................................................ 3

27
*Gottschalk v. Benson*,
409 U.S. 63 (1972) ....................................................................................................... 3, 4, 6
28

-ii-

1

## TABLE OF AUTHORITIES

2

**Page**

3

*Lakeside Community Hospital v. Tahoe Regional Planning Agency,*
 461 F. Supp. 1150 (D. Nev. 1978) .................................................................. 10

4

*Landis v. N. Am. Co.,*
 299 U.S. 248 (1936) ......................................................................................... 10

5

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
 475 U.S. 574 (1986) ........................................................................................... 3

7

*Parker v. Flook,*
 437 U.S. 584 (1978) .............................................................................. 3, 4, 7, 8

8

9

*Rambus Inc. v. NVIDIA Corp*
 C 08-5500 SI, 2009 U.S. Dist. LEXIS 19204 (N.D. Cal. March 11, 2009) ..................... 10

10

11

## FEDERAL STATUTES

12

Fed. R. Civ. P. 56 .................................................................................................. 1, 3

13

35 U.S.C. § 101 ......................................................................................... 1, 3, 4, 8, 9, 11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION**

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE THAT on September 9, 2009, at 9:00 a.m., in the Courtroom of

4    the Honorable Sandra Brown Armstrong located at 1301 Clay Street, Courtroom 3, 3rd Floor,

5    Oakland, California, Defendant and Counterclaimant 3DLabs Inc., Ltd. ("3DLabs") will, and

6    hereby does, move the Court for an entry of summary judgment ruling that Claims 1, 4, and 5 of

7    U.S. Patent No. 6,172,679 and Claims 1 and 12 of U.S. Patent No. 6,618,047 are invalid under 35

8    U.S.C. § 101 for failure to claim patentable subject matter, or in the alternative, for an order

9    staying this case pending the Supreme Court's decision in the appeal of *In re Bilski*, 545 F.3d 943

10   (Fed. Cir. 2008).

11

**MOTION**

12        Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Northern District of

13   California Civil Local Rule 56-1, 3DLabs respectfully requests that this Court issue an order

14   declaring that Claims 1, 4, and 5 of U.S. Patent No. 6,172,679 and Claims 1 and 12 of U.S. Patent

15   No. 6,618,047 are invalid for failure to comply with the subject matter eligibility requirements of

16   35 U.S.C. § 101.  Specifically, the claims asserted by FuzzySharp Technologies Incorporated

17   ("FST") fail to meet the Federal Circuit's "machine-or-transformation" test for patentability under

18   35 U.S.C. § 101 as set out in the recent decision of *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008).

19   The claims are not "tied to a particular machine" and do not "transform[] an article into a

20   different state or thing."  *See Bilski*, 545 F.3d at 961-62.  In the alternative, 3DLabs moves for an

21   order staying this case pending the decision of the Supreme Court in the *Bilski* appeal.  This

22   motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points

23   and Authorities, the Declaration of Jonathan D. Baker, the pleadings and papers on file in this

24   action, and any further material and argument presented to the Court in connection with this

25   Motion.

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3       3DLabs respectfully moves for summary judgment of invalidity of claims 1, 4, and 5 of

4  U.S. Patent No. 6,172,679 ("the '679 patent") and claims 1 and 12 of U.S. Patent No. 6,618,047

5  ("the '047 patent") because these process claims, the only claims at issue in this case, fail to claim

6  patentable subject matter.  These claims are process claims (*i.e.*, method claims) merely drawn to

7  abstract mathematical algorithms and formulas for calculating whether certain surfaces are visible

8  or hidden in 3D computer graphics.  As such, the claims impermissibly seek to pre-empt the use

9  of a fundamental mathematical principle.  Accordingly, these claims are invalid for failure to

10 claim patentable subject matter under 35 U.S.C. § 101 pursuant to the "machine-or-

11 transformation" test for process claims set forth by the Federal Circuit in *In re Bilski*, 545 F.3d

12 943 (Fed. Cir. 2008), *cert. granted*, 129 S. Ct. 2735 (2009).  Under the "machine-or-

13 transformation" test, a process or method is patentable only if it (1) "is tied to a particular

14 machine," or (2) "transforms an article into a different state or thing."  *Id.* at 961-62.  Here, the

15 asserted claims fail to meet either branch of the test.  The issue of whether a claim satisfies the

16 requirements of 35 U.S.C. § 101 is a question of law that this Court can decide on summary

17 judgment.   Accordingly, this Court should grant summary judgment of invalidity of each of these

18 claims for failure to claim patent eligible subject matter under § 101.  In the alternative, to the

19 extent the Court prefers to postpone ruling on this motion because of the pending Supreme Court

20 review of the *Bilski* decision, this Court should stay the case pending the Supreme Court's

21 decision.

22

## II.    ISSUE TO BE DECIDED

23       The issue to be decided is whether FST's asserted claims, which are all process claims

24 drawn to abstract mathematical algorithms that are neither tied to a particular machine nor

25 capable of transforming a particular article into a different state or thing, claim unpatentable

26 subject matter and are thus invalid under 35 U.S.C. § 101.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   **STATEMENT OF FACTS**

The '679 patent and the '047 patent (a continuation of the '679 patent) are both directed towards "improved method[s] for performing visibility calculations" in 3D graphics.  *See* Declaration of Jonathan D. Baker, Ex. A, 2:18-21 ('679 patent), Ex. B, 2:21-24 ('047 patent).[1] More specifically, the patents claim methods drawn to mathematical algorithms that can be used to reduce the calculations required to determine whether a 3D surface is visible or invisible.  *See* Ex. A, 2:18-48, Ex. B, 2:21-44.  Each of the claims at issue is a method claim drawn to such a mathematical algorithm.  *See* Ex. A, 28:26-58, Ex. B, 28:27:66-28:16, 28:65-29:21.  Claim 1 of the '047 patent, which is representative of the claims at issue, reads as follows:

> 1.  A method of reducing the visibility related computations in 3-D computer graphics, the visibility related computations being performed on 3-D surfaces or their sub-elements, or a selected set of both, the method comprising:
> [A] identifying grid cells which are under or related to the projections or extents of projections associated with at least one of said 3-D surfaces or their sub-elements;
> [B] comparing data associated with said at least one of 3-D surfaces or their sub-elements with stored data associated with the grid cells;
> [C] determining which of said at least one of 3-D surfaces or their sub-elements is always invisible or always visible to a viewpoint or a group of viewpoints by projection based computations prior to a visibility computations; and
> [D] ignoring said determined at least one of the 3-D surfaces or their sub-elements during said visibility computation.

Ex. B, 27:66-28:16.

As can be readily seen, the claims recite a sequence of algorithmic steps ("identifying," "comparing," "determining," and "ignoring") that are not limited to a particular machine and do not transform any article into a different state or thing.  Instead, the claims merely manipulate data using a mathematical algorithm.  For example, as part of the identifying step, the specification describes calculating the fuzzy region of an edge using the equations set forth in Appendix 6.  *See* Ex. A, 10:9-11, 24:32-25:39.  Significantly, the claims do not even require the display of the resulting 3D surfaces on a computer screen.  *See* Ex. A, 28:26-58, Ex. B, 27:66-28:16, 28:65-29:21.

---

[1] All references to "Ex. __" refer to exhibits attached to the Declaration of Jonathan D. Baker submitted concurrently with this motion.

3DLABS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY UNDER 35 U.S.C. § 101 FOR NON-PATENTABLE SUBJECT
MATTER; CASE NO.: C07-CV-5948-SBA

2

1    **IV.    LEGAL STANDARDS**

2          Summary judgment is appropriate when no genuine issue of material fact exists and the

3    moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

4    322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986).  "Summary

5    judgment is as appropriate in a patent case as in any other . . . [and] court[s] should utilize the

6    salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful

7    utilization of the jury process and judicial resources."  *Barmag Barmer Maschinefabrik AG v.*

8    *Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).  To defeat a summary judgment motion,

9    the opposing party must do "more than simply show that there is some metaphysical doubt as to

10   the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

11   Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for

12   trial."  Fed. R. Civ. P. 56(e); *Matsushita Elec.*, 475 U.S. at 587.

13         In order to be patentable, a claim must meet the subject matter requirements of 35 U.S.C.

14   § 101 which authorizes patent protection for "any new and useful process, machine, manufacture,

15   or composition of matter."  35 U.S.C. § 101.  "Whether a claim is drawn to patent-eligible subject

16   matter under § 101 is a threshold inquiry."  *Bilski*, 545 F.3d at 950.  Any claim "failing the

17   requirements of § 101 must be rejected, even if it meets all of the other legal requirements of

18   patentability."  *Id.*  Whether a claim is drawn to statutory subject matter under § 101 is a question

19   of law that can be decided on summary judgment.  *See Classen Immunotherapies, Inc. v. Biogen*

20   *Idec*, Nos. 2006-1634, 2006-1649, 2008 WL 5273107, at *1 (Fed. Cir. 2008) (affirming the

21   district court's grant of summary judgment that the claims are invalid under 35 U.S.C. § 101

22   pursuant to *Bilski*).

23         Although § 101 refers to patent protection for a "process," the courts have long held that

24   not all types of processes are eligible for patent protection.  *See Parker v. Flook*, 437 U.S. 584,

25   588-89 (1978); *Gottschalk v. Benson*, 409 U.S. 63, 72-3 (1972).  Under § 101, a patent for a

26   process or method cannot claim "laws of nature, natural phenomena, [or] abstract ideas."

27   *Diamond v. Diehr*, 450 U.S. 175, 191 (1981).  Such fundamental principles are "part of the

28   storehouse of knowledge of all men . . . free to all men and reserved exclusively to none."  *Funk*

1  *Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).  "Phenomena of nature, though

2  just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are

3  the basic tools of scientific and technological work."  *Benson*, 409 U.S. at 67.  Similarly,

4  mathematical formulas and algorithms by themselves cannot be patented.  *Diehr*, 450 U.S. at 191.

5       In *Bilski*, the Federal Circuit set forth the "machine-or-transformation" test as the

6  "definitive test" for determining whether a method or process claim is patent eligible under § 101.

7  *See Bilski*, 545 F.3d at 954.  Under the machine-or-transformation test, a method claim can only

8  qualify as patent-eligible subject matter if it: (A) "is tied to a particular machine or apparatus" or

9  (B) "transforms an article into a different state or thing."  *Id*. at 961-62.  Additionally, "the use of

10  a specific machine or transformation of an article must impose meaningful limits on the claim's

11  scope."  *Id*.  Furthermore, "the involvement of the machine or transformation in the claimed

12  process must not merely be insignificant extra-solution activity."  *Id.*  Thus, incidental or token

13  recitations of structure or transformation are insufficient under the machine-or-transformation

14  test.  *See Ex Parte Langemyr*, No. 2008-1495, 2008 Pat. App. LEXIS 13, at *28 (Bd. Pat. App. &

15  Interf. May 28, 2008).  Moreover, the recitation of a particular purpose for a mathematical

16  formula or algorithm does not make a claim patentable.  *See Flook*, 437 U.S. at 595 ("if a claim is

17  directed essentially to a method of calculating, using a mathematical formula, even if the solution

18  is for a specific purpose, the claimed method is nonstatutory.").

19  **V.    ARGUMENT**

20       All of FST's asserted claims are drawn to abstract mathematical formulas and algorithms

21  that fail *Bilski's* machine-or-transformation test, and accordingly, are invalid under 35 U.S.C.

22  § 101 for failure to claim patent-eligible subject matter.  As explained below, FST's asserted

23  claims are invalid because the claims:  (1) fail to satisfy the "machine" branch of the test because

24  they are not tied to a particular machine, and (2) fail to satisfy the "transformation" branch of the

25  test because they do not transform a physical object or substance into a different state or thing.

26

27

28

**A.    The Asserted Claims Fail To Satisfy The "Machine" Branch Of The Test For Patentable Subject Matter Under § 101 Because They Are Not Tied To A Particular Machine**

The asserted claims fail to satisfy the machine branch of the test for patentable subject under *Bilski* because: (1) the claims are not tied to a particular machine, (2) the reference to a "computer" and "computer storage" fails to impose any meaningful limits on the scope of the claims, and (3) the involvement of the "computer" and "computer storage" merely constitute insignificant extra-solution activity.

**1.    The Asserted Claims Are Not Tied To A Particular Machine As Required By *Bilski***

FST's asserted claims are not tied to a particular machine as required by the "machine" branch of the *Bilski* test. Claim 1 of the '047 patent makes no reference to a machine or apparatus at all, and accordingly, cannot be "tied to a particular machine," as required by *Bilski*. Similarly, the passing references in the remaining asserted claims to performing the methods "on a computer" and to storing data "in computer storage" fail to tie the methods to any particular machine.

Indeed, following the *Bilski* decision, the district courts have consistently held that the mere recitation of a "computer" or similar language in a patent claim does not tie that claim to a particular machine under *Bilski*. *See DealerTrack, Inc. v. Huber*, No. CV 06-2335, 2009 U.S. Dist. LEXIS 58125, at *12-13 (C.D. Cal. July 7, 2009) ("Under Bilski and the recent decisions interpreting it, [a] central processor . . . cannot constitute a 'particular machine'" where "[t]he [patent] does not specify precisely how the computer hardware and database are 'specially programmed,' and the claimed central processor is nothing more than a general purpose computer that has been programmed in some unspecified manner."); *CyberSource Corp. v. Retail Decisions, Inc.*, No. C 04-03268, 2009 U.S. Dist. LEXIS 26056, at *20-25 (N.D. Cal. March 26, 2009) (holding that the recitation of "over the Internet" did not tie a process claim to a particular machine). The Patent and Trademark Office Board of Patent Appeals and Interferences has also reached the same conclusion. *See Ex Parte Nawathe*, No. 2007-3360, 2009 WL 327520, at *4 (Bd. Pat. App. & Interf. Feb. 9, 2009) ("We note that the recited method, while being

3DLABS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101 FOR NON-PATENTABLE SUBJECT MATTER; CASE NO.: C07-CV-5948-SBA

5

1  computerized, is not tied to a particular machine for executing the claimed steps."); *Ex Parte*

2  *Mitchell*, No. 2008-2012, 2009 WL 460662, at *6 (Bd. Pat. App. & Interf. Feb. 23, 2009) ("[T]he

3  use of a general 'processor' and 'memory' is insufficient to render an otherwise ineligible claim

4  patent eligible.").

5  　　　　For example, in *DealerTrack v. Huber*, the patentee claimed a "computer aided method"

6  of managing a credit application. *DealerTrack*, 2009 U.S. Dist. LEXIS 58125 at *4-5. The court

7  held that the claims were not tied to a particular machine, because the patent did "not specify

8  precisely how the computer hardware and database [were] 'specially programmed,' and the

9  claimed central processor [was] nothing more than a general purpose computer that [had] been

10  programmed in some unspecified manner." *Id.* at *12. Similarly, here, while FST's claims refer

11  to being "performed on a computer" and utilizing "computer storage," such recitations purport to

12  general purpose computers and computer storage.

13  　　　　Similarly, in *Ex Parte Nawathe,* the appellants claimed a method and system for

14  representing a normalized eXtensible Markup Language data structure as fixed sets of tables in a

15  relational database. The Board of Patent Appeals and Interferences found that while the

16  appellant's method recited that it was "computerized," it was nevertheless not tied to a particular

17  machine under *Bilski*. *Ex Parte Nawathe*, No. 2007-3360, 2009 WL 327520, at *4 (Bd. Pat. App.

18  & Interf. Feb. 9, 2009). Similarly, here, FST's claims refer to general purpose computers and

19  computer storage, and are not tied to a particular machine.

20  　　　　For all of these reasons, FST's claims fail the "machine" branch of Bilski's two-part test.

21  　　　　　　**2.　　The Recitation Of A "Computer" And "Computer Storage" In Some
22  　　　　　　　　Of The Claims Does Not Impose Any Meaningful Limit On Claim
　　　　　　　　　　Scope As Required By *Bilski***

23  　　　　Additionally, even if the references to a "computer" and "computer storage" were

24  considered to tie the claims to a particular machine, the mere recitation of these elements does not

25  impose any meaningful limits on the claim scope as required by *Bilski*. In *Bilski*, the Federal

26  Circuit held that the recitation of a machine "must impose meaningful limits on the claim's scope

27  to impart patent-eligibility." *Bilski*, 545 F.3d at 961. Here, FST's recitation of a "computer" and

28  "computer storage" in some of its claims fails to impose any meaningful limit on the claim scope

3DLABS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY UNDER 35 U.S.C. § 101 FOR NON-PATENTABLE SUBJECT
MATTER; CASE NO.: C07-CV-5948-SBA

6

1    because the method has no substantial practical application except in connection with a computer.

2    *See Benson*, 409 U.S. at 721-22 (holding that "the mathematical formula involved here has no

3    substantial practical application except in connection with a digital computer" and was therefore

4    not eligible for a patent).  Additionally, the mathematical algorithm merely uses the computer to

5    perform the required calculations, but the computer does not impose any additional limits on the

6    process itself.  As a result, the recitation of the computer does not "reduce the pre-emptive

7    footprint" of the mathematical algorithms covered by the claims.  *See Bilski*, 545 F.3d at 955.

8         Indeed, district courts that have addressed this issue following *Bilksi* have consistently

9    concluded that the mere recitation of a general purpose computer to perform mathematical

10   algorithms fails to impose any meaningful limit on claim scope.  *See, e.g.,  Every Penny Counts,*

11   *Inc. v. Bank of America Corp.*, No. 2:07-cv-042, 2009 U.S. Dist. LEXIS 53626, at *7-8 (M.D.

12   Fla. May 27, 2009) (holding that computers for data input and data output and to perform the

13   required calculations for claims covering a mathematical algorithm do not impose meaningful

14   limitations on the claimed process); *see also CyberSource*, 2009 U.S. Dist. LEXIS 26056, at *23-

15   24 (finding that limiting claims to uses involving the Internet did not impose any meaningful limit

16   on the scope of the claims).  The Board of Patent Appeals and Interferences at the U.S. Patent and

17   Trademark Office has also come to the same conclusion.  *See, e.g.*, *Ex Parte Cornea-Hasegan*,

18   No. 2008-4742, 2009 WL 86725, at *5 (Bd. Pat. App. & Interf. Jan. 13, 2009) (holding that the

19   "recitation of a 'processor' performing various functions is nothing more than a general purpose

20   computer that has been programmed in an unspecified manner" and that "[s]uch a field-of-use

21   limitation is insufficient to render an otherwise ineligible process claim patent eligible.");

22   *Langemyr*, 2008 Pat. App. LEXIS 13 at *29 (holding that recitation of "computer apparatus" in

23   preamble was "not a limitation at all to the scope of the claim, and the claim is directed, in

24   essence, to the method performed by any means.").

25        Therefore, FST's references to a "computer" and "computer storage" in its claims do not

26   provide any meaningful limits on claim scope, and FST's claims fail to meet the "machine"

27   branch of the *Bilski* test for this reason as well.[2]

28   _____

[2] Additionally, the fact that the asserted claims apply the mathematical algorithm to the field of
3D computer graphics does not provide a meaningful limit on the claim scope or transform the

1

2

### 3. The "Computer" and "Computer Storage" Recited In Some of the Claims Provide Merely Insignificant Extra-Solution Activity

3    In addition to the reasons discussed above, the recitation of a "computer" and "computer

4    storage" in some of the claims cannot impart patent eligibility because those structures merely

5    perform insignificant extra-solution activity.  In *Bilski*, the Federal Circuit prohibited reliance on

6    "insignificant extra-solution activities" to meet the machine-or-transformation test in order to

7    prevent patentees from circumventing the policy underlying the test.  *See Bilksi*, 545 F.3d at 957.

8    As the Supreme Court observed, "[a] competent draftsman could attach some form of post-

9    solution activity to almost any mathematical formula."  *Flook*, 437 U.S. at 590.  And allowing

10   extra-solution activity, no matter how conventional, to transform an unpatentable principle into a

11   patentable method "exalts form over substance."  *Id*.  Here, the claimed mathematical algorithm

12   uses a computer to perform the required calculations and to store the data in computer storage.

13   However, the involvement of the computer and computer storage are merely insignificant extra-

14   solution activity because they involve merely conventional activities and do not add any

15   significant limits on the process itself.  *See Every Penny Counts*, 2009 U.S. Dist. LEXIS 53626 at

16   *7 ("The involvement of the machine in the process is insignificant extra-solution activity and

17   thus the process is not patentable under § 101."); *Langemyr*, 2008 Pat. App. LEXIS 13 at *48-49

18   (holding that recitation of "storing said input data . . . in a memory of the computer system" is

19   insufficient to render claim patentable).  Accordingly, the "computer" and "computer storage"

20   references cannot render the asserted claims patentable.

21   

22   

### B. The Asserted Claims Fail To Satisfy The "Transformation" Branch Of The Test For Patentable Subject Matter Under § 101 Because They Do Not Transform An Article Into A Different State Or Thing

23   In addition to failing the "machine" branch of the *Bilski* test as discussed above, the

24   asserted claims also fail to satisfy the "transformation" branch of the *Bilski* test because they do

25   not transform an article into a different state or thing.  In order to be patentable under the

26   ─────────────────────────────────────────────

unpatentable mathematical algorithms into patentable subject matter.  *See Flook*, 437 U.S. at 595

27   ("if a claim is directed essentially to a method of calculating, using a mathematical formula, even
     if the solution is for a specific purpose, the claimed method is nonstatutory."); *Diehr*, 450 U.S. at

28   191 ("A mathematical formula as such is not accorded the protection of our patent laws, and this
     principle cannot be circumvented by attempting to limit the use of the formula to a particular
     technological environment.").

1   "transformation" branch of the *Bilski* test, a method claim must transform physical objects or

2   substances, or something representing physical objects or substances into a different state or

3   thing.  *See Bilski*, 545 F.3d at 962-3.  Moreover, the transformation "must be central to the

4   purpose of the claimed process."  *Id.* at 962.  Claims to a mathematical algorithm, like the claims

5   in this case, fail the test because they do not transform an article into a different state or thing.

6   The claims merely manipulate abstract data to reach the solution to a mathematical formula,

7   which is insufficient to meet the "transformation" branch of the *Bilski* test.  *See CyberSource*,

8   2009 U.S. Dist. LEXIS 26056 at *10 ("There is no indication that the Federal Circuit, having

9   reaffirmed the machine-or-transformation test, intended to weaken the key term 'transformation'

10  by equating it with mere manipulation.").  Here, there is no language in the claims to even

11  suggest that a physical object or substance, or something representing a physical object or

12  substance, is transformed into a different state or thing.

13          FST may attempt to argue that claim 4 of the '679 patent transforms an article to a

14  different state or thing because it refers to "physical data."  Specifically, claim 4 reads: "A

15  method as claimed in claim 1, wherein said images are selected from the group consisting of

16  graphic images, computer vision data, abstract data and physical data."  Ex. A, 28:53-55.

17  However, this argument fails.  As an initial matter, it is not clear that the reference to "physical

18  data" can make this claim patentable when it is just one member of a group that also includes

19  "graphic images" and "abstract data" which need not represent any physical object or substance at

20  all.  More importantly, claim 4 does not transform the physical data into a different state or thing.

21  At most, claim 4 merely performs mathematical manipulations on the data, which is insufficient

22  under *Bilski*.  *See CyberSource*, 2009 U.S. Dist. LEXIS 26056 at *10.  Significantly, claim 4 does

23  not require a display of the results of the mathematical algorithm on a computer screen.  This is in

24  contrast to the claim at issue in *In re Abele* where the transformation of X-ray data "into a

25  particular visual depiction of a physical object on a display was sufficient to render that . . .

26  process patent-eligible."  *See Bilski*, 545 F.3d at 963 (discussing *In re Abele*, 684 F.2d 902

27  (C.C.P.A. 1982)).  Thus, the asserted claims do not to transform an article into a different state or

28  thing, and therefore fail the transformation branch of the *Bilski* test.

1

**C.    The Court Should Grant 3DLabs' Motion For Summary Judgment Or Alternatively Stay The Case**

2

3       As shown above, FST's asserted claims are invalid under § 101 for failure to claim

4  statutory subject matter under the test set forth by the Federal Circuit in *Bilski*.  FST may argue,

5  however, that summary judgment should not be granted because the Supreme Court recently

6  granted certiorari in *Bilski*.  This argument lacks merit because the Federal Circuit's "machine-or-

7  transformation" test is the current controlling law regarding patentable subject matter and

8  summary judgment should be granted accordingly.  *See Lakeside Community Hospital v. Tahoe*

9  *Regional Planning Agency*, 461 F. Supp. 1150, 1153 (D. Nev. 1978) ("[T]his Court is duty bound

10  to follow the law as articulated by the Court of Appeals for this Circuit. . . . That a writ of

11  certiorari has issued from the United States Supreme Court to the Court of Appeals does not

12  relieve this Court of that duty.").  Nonetheless, to the extent that the Court prefers to postpone

13  granting this Motion until the conclusion of the Supreme Court's review of *Bilski*, 3DLabs

14  respectfully requests that the Court stay this case pending the Supreme Court's decision in the

15  *Bilski* appeal.

16       A court may stay proceedings as part of its inherent power "to control the disposition of

17  the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

18  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Exercise of this power "calls for the exercise of

19  judgment, which must weigh competing interests and maintain an even balance."  *Id.* at 254-55.

20  Considerations often undertaken by a court include "(1) the judicial resources that will be

21  saved . . ., (2) the hardship or inequity to the moving party if the action is not stayed, and (3) the

22  potential prejudice to the non-moving party."  *Abbott Laboratories, Inc. v. Medtronic, Inc.*, No.

23  C-08-4962-DLJ, 2009 U.S. Dist. LEXIS 29283, at *4 (N.D. Cal. March 24, 2009).  Courts in this

24  district have previously stayed cases pending expected decisions from an appellate court.  *See,*

25  *e.g., Rambus Inc. v. NVIDIA Corp.*, No. C 08-3343 SI; C 08-5500 SI, 2009 U.S. Dist. LEXIS

26  19204, at *6 (N.D. Cal. March 11, 2009) (finding that it was proper to stay a case pending a

27  potentially dispositive Federal Circuit decision).

28       Here, judicial resources will be conserved by staying the case because it would be a waste

1   of judicial resources to continue litigating over patents that are invalid under the current law.  For

2   the same reason, it would be inequitable to require 3DLabs to continue to expend time and money

3   defending against infringement claims based on patents that are presently invalid.  Finally, FST,

4   as a non-practicing entity, will not suffer any unfair prejudice if the case were stayed.

5   **VI.    <u>CONCLUSION</u>**

6          For all of the foregoing reasons, 3DLabs respectfully requests that the Court grant

7   3DLabs' motion for summary judgment that claims 1, 4, and 5 of the '679 patent and claims 1

8   and 12 of the '047 patent are invalid under 35 U.S.C. § 101.  In the alternative, 3DLabs

9   respectfully requests that the Court stay this case pending the Supreme Court's decision in *Bilski*.

10

11  Dated: August 5, 2009                    DECHERT LLP

12

13                                           By: /s/ Jonathan D. Baker

14                                               Jonathan D. Baker
                                                 Dechert LLP
15                                               2440 W. El Camino Real, Suite 700
                                                 Mountain View, CA 94040-1499
16                                               Telephone: (650) 813-4800
                                                 Facsimile: (650) 813-4848

17                                           Attorneys for Defendant and Counterclaimant
18                                           3DLABS INC., LTD.

19

20

21

22

23

24

25

26

27

28